Receipt No. 075085

ORIGINAL

FILED
MAY 7 2013
U.S. COURT OF
FEDERAL CLAIMS

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| James L. Driessen<br>305 N 1130 E<br>Lindon, UT 84042<br>                            Plaintiff<br><br>v.<br><br>LIBRARY OF CONGRESS;<br>JAMES HADLEY BILLINGTON, in his official<br>Capacity as the Librarian of Congress;<br>THE UNITED STATES COPYRIGHT OFFICE;<br>MARIA A. PALLANTE, in her official<br>capacity as the Register of Copyrights<br>in the UNITED STATES COPYRIGHT OFFICE;<br>and<br>ROBERT KASUNIC, in his official capacity as<br>Associate Register of Copyrights and<br>Director of Policy & Practices in the<br>UNITED STATES COPYRIGHT OFFICE<br>                           Defendants | NO. 13-323 C |

## COMPLAINT

Plaintiff, James L. Driessen, Pro Se, files this action against LIBRARY OF CONGRESS; JAMES HADLEY BILLINGTON, in his official Capacity as the Librarian of Congress; THE UNITED STATES COPYRIGHT OFFICE; MARIA A. PALLANTE, in her official capacity as the Register of Copyrights in the UNITED STATES COPYRIGHT OFFICE; and ROBERT KASUNIC, in his official capacity as Associate

1

Register of Copyrights and Director of Policy & Practices in the UNITED STATES COPYRIGHT OFFICE, and states as follows:

**NATURE OF THE ACTION**

1. This is a declaratory action asking the court to declare that Plaintiff is the owner of an exclusive right in copyright and thereby oblige the Copyright Office (hereafter "Office") to perform a permissive registration under the copyright code.

2. Plaintiff has previously petitioned the Office on behalf of his Company (Vibme LLC) for rulemaking. That request for rulemaking has been denied and the denial has already been made final by the Office.

3. Plaintiff has also requested registration and has been ignored. The refusal was not the Office having denied the benefits of registration - that would require further review through the administrative appeals process prior to judicial review. But in this case, the Office refusal of the petition was a denial of the existence of rights, which in turn, has given rise to this separate judicial review.

4. This complaint concerns the unlawful denial of Plaintiff's statutory permissive registration of an exclusive right under Title 17 of the United States Code.

5. The Copyright Office, as a part of the Library of Congress, has been commissioned by Congress under Title 17, and particularly 17 U.S.C. §408, to provide statutory permissive registration to the owners of "any" exclusive right in works of authorship.

2

6. The Copyright Office has been given sufficient direction from Congress through Title 17, and through its powers as delegated to the Office by the Library of Congress, for providing registration of exclusive viewing and transmission rights for media which consumers have legally and lawfully purchased as exclusive rights.

7. Public policy dictates that under the existing framework of the United States Code for the benefit of both culture and commerce alike, the Office should register online media ownership for physically purchased media material objects. Refusing to register ownership only enforces the need for piracy. Whereas registering ownership creates value.

8. Piracy and the desire to make illegal copies will greatly diminish when legitimate media collecting can again become the consumer norm through registered ownership. As encrypted file containers for media become ubiquitous in the cloud or on local data storage, the convenience of ownership registration will legitimize consumer demand and remove much of the impetuous for breaking authorization and decryption codes. Online services that allow upload and streaming will more easily be able to distinguish between unlicensed viral video and licensed commercial video. If a commercial video with broken encryption happens to be uploaded to an unlicensed forum, it can be detected easily whether or not the content has been illegally copied. Not only can we detect the copying, but we can

also detect the online account for who (or what online entity) the First Sales rights belong (see content fingerprinting as described in the attachments). When a consumer knows that commercial media is easily detected and linked back to a registered owner, the value of illegal copying to a rogue hard drive or other memory device like the old physical media writeable discs, becomes much less desirable – especially when there is a registration system that allows them to copy encrypted file containers wherever they are needed. When we require the "mark" on validly obtained media and then increase its value, we increase the demand, the desire, and the worth of owning content. This is so important to our economy.

9. Plaintiff owns media material objects in the form of discs, tapes, and records legally and lawfully purchased. These media material objects have first sale distribution rights, with the fair use time-shifting, space-shifting, and place-shifting rights, joined with the transmitting for private home viewing rights from an authorized copy (hereafter "Cloud Ownership"). If anyone other than Plaintiff (including the author) took those rights with the intent to permanently deprive Plaintiff of those rights, Plaintiff could request legal action from the local law enforcement to arrest and detain any such individual and further request criminal prosecution of that individual – in other words, Plaintiff's rights are exclusive rights.

## JURISDICTION AND VENUE

10. The Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1491 because this action is against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States. In any case within its jurisdiction, the court shall have the power to remand appropriate matters to any administrative or executive body or official with such direction as it may deem proper and just.

11. Venue is proper in the Court of Federal Claims because there is no other case arising under the same set of facts, which is pending against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States. The APA, under 5 U.S.C. §§ 701-06, does not apply where this case confronts the possible difference between refusals (as denying the benefits of registration on one hand) and the denial of the existence of rights (on the other). Plaintiff's declaratory action presents this court with the difficult question of how to discern whether the court is reviewing solely the propriety of registration denial or the broader issue of copyrightability. Plaintiff alleges that his very rights of copyrighability have been denied by the Office.

## PARTIES

12. Plaintiff is a citizen of these United States of America.

13. The Library of Congress is "of Congress" and therefore not a federal agency per se, but for the purposes of any lawsuit may be treated as a federal agency.

14. The United States Copyright Office is an office of record within the Library of Congress, which is a place where claims to copyright are registered and where documents relating to copyright may be recorded when the requirements of the copyright law are met. The Office furnishes information about the provisions of the copyright law and the procedures for making a registration or recordation, explains the operations and practices of the Office, and reports on facts found in the public records of the Office. The Office also administers the mandatory deposit provisions of the copyright law and the various compulsory licensing provisions of the law, which include collecting royalties. In addition, the Office provides expert assistance to Congress on intellectual property matters; advises Congress on anticipated changes in U.S. copyright law; analyzes and assists in drafting copyright legislation and legislative reports; provides and undertakes studies for Congress; and offers advice to Congress on compliance with multilateral agreements, such as the Berne Convention for the Protection of Literary and Artistic Works. The Office works with the executive branch's Department of State, the U.S. Trade Representative's Office, and the Department

of Commerce in providing technical expertise in negotiations for international intellectual property agreements; and provides technical assistance to other countries in developing their own copyright laws.

15. The prestigious James Hadley Billington is the 13th Librarian of Congress who has performed his services to the United States Congress with honor since 1987 and is a named party in his official capacity for purposes of this declaratory action.

16. The distinguished Maria A. Pallante is the Register of Copyrights and Director, U.S. Copyright Office and is a named party in her official capacity for purposes of this declaratory action.

17. The distinguished Robert Kasunic is the Associate Register of Copyrights and Director of Policy & Practices and is a named party in his official capacity for purposes of this declaratory action.

**BACKGROUND**

18. With great respect for the United States Copyright Office and to those who admirably serve their country in running that Office, James L. Driessen requested that the Office would grant the registration of exclusive first sale distribution rights, with the fair use time-shifting, space-shifting, and place-shifting rights, joined with the transmitting for private home viewing rights from an authorized copy (hereafter "Cloud Ownership")[1] of

---

[1] Personal Cloud Media Ownership Statutes
17 U.S.C. § 106 "... exclusive rights ... (1) to reproduce the copyrighted work in copies or phonorecords..."
17 U.S.C. § 106A (b) Scope and Exercise of Rights "...Only the author of a work of visual art has the rights conferred ..."
17 U.S.C. § 101 "A work of visual art does not include— "...motion picture or other audiovisual work... [a] work is "fixed" in a tangible medium of expression when its embodiment in a copy or phonorecord, by or under the

7

the following media material objects: a) The Dark Side of the Moon (music album CD) – quantity 2; b) Short Circuit (motion picture DVD) – quantity 2; and c) The Outlaw Josey Wales (motion picture Bluray) – quantity 2

19. Plaintiff requested that the Office would determine procedures, policies, and fees for such registration, but was ignored. Plaintiff's company had been previously and finally denied a request for rulemaking.

20. Attached and incorporated by reference are: 1) APPLICATION FOR COPYRIGHT REGISTRATION; 2) PETITION FOR RULEMAKING, Vibme LLC, 5/31/2012; 3) PETITION FOR WAIVER OR SUSPENSION OF RULES (OR CONSOLIDATION MOTION IN THE ALTERNATIVE) RE: DOCKET 2011-07; 4) REQUEST FOR RECONSIDERATION AND REQUEST FOR

---

authority of the author, is sufficiently permanent or stable to permit it to be perceived, reproduced, or otherwise communicated for a period of more than transitory duration. A work consisting of sounds, images, or both, that are being transmitted, is "fixed" for purposes of this title if a fixation of the work is being made simultaneously with its transmission."
17 U.S.C. § 107 "... the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords ..."
17 U.S.C. § 108 (b) "The rights of reproduction and distribution under this section ..."
17 U.S.C. § 109 (a) "Notwithstanding the provisions of section 106(3), the owner of a particular copy or phonorecord lawfully made under this title, or any person authorized by such owner, is entitled, without the authority of the copyright owner, to sell or otherwise dispose of the possession of that copy or phonorecord." emphasis added; : 17 U.S.C. § 104A applies "... if the work never entered the public domain in the United States."
17 U.S.C. § 110 "Notwithstanding the provisions of section 106, the following are not infringements of copyright ... (11)the making imperceptible, by or at the direction of a member of a private household, of limited portions of audio or video content of a motion picture, during a performance in or transmitted to that household for private home viewing, from an authorized copy of the motion picture, or the creation or provision of a computer program or other technology that enables such making imperceptible and that is designed and marketed to be used, at the direction of a member of a private household, for such making imperceptible, if no fixed copy of the altered version of the motion picture is created by such computer program or other technology."
Note: 17 U.S.C. § 111 "The secondary transmission of a performance or display of a work embodied in a primary transmission is not an infringement of copyright if... the secondary transmission is made by any carrier who has no direct or indirect control over the content or selection of the primary transmission or over the particular recipients of the secondary transmission, and whose activities with respect to the secondary transmission consist solely of providing wires, cables, or other communications channels for the use of others..."

NOTICE ON FINALITY; 5) Denial Letter, Davie O. Carson, August 16, 2012; 6) Final Denial, R. Kasunic, January 8, 2013.

21. Time is of the essence as Plaintiff's rights and all the rights of the citizens of the United States in these types of exclusive rights are being both threatened and outright denied.

## CAUSE OF ACTION

### COUNT ONE
### DECLARATORY JUDGMENT
### UNCONSTITUTIONAL EXERCISE OF FEDERAL POWER
### AND VIOLATION OF THE FOURTEENTH AMENDMENT
### (Const. art. I & amend. XIV)

22. Plaintiff realleges, adopts, and incorporates by reference paragraphs 1 through 21 above with attachments as though fully set forth herein.

23. Plaintiff cannot afford the exorbitant and unfunded costs of taking on the United States, but because of both actions and inactions of the Office, Plaintiff has no choice other than to bring and participate in this lawsuit.

24. The granting of copyright registration for the exclusive rights of Cloud Ownership in media material objects has been delegated by Congress to the Copyright Office.

25. Under the guise of co-opting Congress over their budgetary processes and legislative agendas, the Office has denied Plaintiff the right to copyright registration of an exclusive copyright, by not providing a procedure, policy, or fee

9

for such registration. The Office deprives Plaintiff of his rights in violation of Article I, section 1 of the Constitution of the United States.

26. Congress has made the law and the Office has effectively denied that law in their denial of permissive registration. WHEREFORE, Plaintiff respectfully requests that the Court will:

    a. Declare Plaintiff is a lawful purchaser and owner of content media; and that as a lawful purchaser and owner of a content media material object, Plaintiff has *exclusive* rights to lawful enjoyment, including displaying, viewing, and transmission of the same for home viewing, within the bounds of copyright law;

    b. Declare that there is no physical or ethereal length of cord which too long which could prohibit such lawful enjoyment, as mentioned above, within any distance;

    c. Declare that Congress has authorized the Office through the Library of Congress, to provide means for permissive registration of *any* exclusive copyright; and

    d. Remand the Plaintiff's request for registration of his exclusive rights to the Office, with proper instruction to the Office, ordering the Office to develop and implement the rules and fees for such permissive registration as required by law.

Respectfully submitted this <u>Sixth</u> day of <u>May</u>, 2013

BY: _____
James L. Driessen, Plaintiff, Pro Se